**DLA PIPER LLP (US)**
Michael D. Hynes (Attorney ID No. 020241999)
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078
Tel: (973) 520-2550

      -and-

John J. Clarke, Jr. (*pro hac vice* motion to be filed)
Steven M. Rosato (Attorney ID No. 108882014)
1251 Avenue of the Americas
New York, New York 10020
Tel:  (212) 335-4500

*Attorneys for Defendant*
 *Bristol-Myers Squibb Company*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| HOWARD BERNSTEIN, on behalf of himself and all others similarly situated,<br><br>                  Plaintiff,<br><br>    v.<br><br>BRISTOL-MYERS SQUIBB CO.; MARK J. ALLES; GIOVANNI CAFORIO, M.D.; SANDRA LEUNG, ESQ.; CHARLES BANCROFT; KAREN M. SANTIAGO; VICKI L. SATO, PH.D.; PETER J. ARDUINI; ROBERT BERTOLINI; MATTHEW W. EMMENS; MICHAEL GROBSTEIN; ALAN J. LACY; DINESH C. PALIWAL; THEODORE R. SAMUELS; GERALD L. STORCH; and KAREN H. VOUSDEN, PH.D.,<br><br>                  Defendants. | Civil Action No. 21 Civ. 20452 |

## NOTICE OF REMOVAL

      PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, and 1453, defendant

Bristol-Myers Squibb Company ("BMS") hereby removes this action from the Superior Court of

New Jersey, Union County, where it currently is pending, to the United States District Court for the District of New Jersey.

Federal subject matter jurisdiction arises under 28 U.S.C. § 1332(d)(2). *See also* 28 U.S.C. § 1453 (removal of class actions). This is a putative class action in which the putative class consists of at least 100 members, the matter in controversy exceeds $5 million, and at least one member of the putative plaintiff class is a citizen of a state different from any defendant. The case is related to four actions, three of them prior-filed, that are pending in the United States District Court for the Southern District of New York before U.S. District Judge Jesse M. Furman, including two earlier-filed putative class actions asserting claims under the federal securities laws based on the same BMS disclosures. *See Khalil v. Bristol-Myers Squibb Co.*, No. 1:21-cv-10351-JMF (S.D.N.Y.); *Williams v. Bristol-Myers Squibb Co.*, No. 1:21-cv-9998-JMF (S.D.N.Y.); *SM Merger/Arbitrage, L.P. v. Bristol-Myers Squibb Co.*, No. 1:21-cv-8255-JMF (S.D.N.Y.); *see also UMB Bank, N.A. v. Bristol-Myers Squibb Co.*, No. 1:21-cv-04897-JMF (S.D.N.Y.).

In accordance with 28 U.S.C. § 1446(a), BMS provides the following short and plain statement of the grounds for removal.

**I.      The Removed Action**

1.      Plaintiff Howard Bernstein filed his complaint in this putative class action in the Law Division of the Superior Court of New Jersey, Union County, on November 12, 2021. Plaintiff served a summons and a copy of the complaint on BMS on November 18, 2021.

2.      True and correct copies of the summons and complaint are attached to this notice as Exhibits 1 and 2, respectively. There are no other pleadings or orders filed in the New Jersey court in this action. Plaintiff's allegations in the complaint are incorporated by reference.

3. Plaintiff alleges that he owned shares of the common stock of Celgene Corporation ("Celgene") at the time of BMS's 2019 acquisition of Celgene and received newly-issued BMS common stock and contingent value rights ("CVRs") that were part of the merger consideration provided by BMS. Plaintiff asserts claims under sections 11(a), 12(a)(2), and 15 of the Securities Act of 1933 based on allegedly "false and misleading statements and omissions" in a registration statement filed in connection with the merger under which shares of BMS common stock and CVRs were issued. Compl. ¶¶ 61, 101, 118-20. Plaintiff asserts those claims on behalf of two putative classes: (i) "all persons who acquired Bristol-Myers common stock in exchange for Celgene securities pursuant to the Acquisition"; and (ii) "all persons who acquired Bristol-Myers CVRs pursuant or traceable to the Registration Statement." *Id.* ¶ 127.

4. BMS is a pharmaceutical company that allegedly issued the CVRs and shares of BMS common stock to plaintiff and other former Celgene shareholders in connection with BMS's acquisition of Celgene. *Id.* ¶ 18. The complaint also names as defendants the members of the BMS board of directors at the time of the registration statement, several BMS officers who allegedly signed the registration statement, and Celgene's chairman and chief executive officer at the time of the registration statement. *Id.* ¶¶ 19-34.

5. The securities allegedly were issued pursuant to a Form S-4 registration statement filed by BMS with the U.S. Securities and Exchange Commission in February 2019. *Id.* ¶¶ 65-68. The CVRs were listed on the New York Stock Exchange and began trading after the closing of the Celgene merger transaction on November 20, 2019. *See id.* ¶¶ 16, 75.

6. Each CVR provided its holder the contingent right to receive a payment from BMS of $9 in cash but only if applications for three separate product candidates were approved by the U.S. Food and Drug Administration ("FDA") by contractual milestone dates. *Id.* ¶ 59. Plaintiff

alleges that if all of the milestones had been met in time, BMS would have paid a total of $6.4 billion to CVR holders because there were more than 700 million CVRs outstanding. *Id.* ¶¶ 18, 59. However, if even one of the three applications was not approved by the FDA by the applicable milestone date, holders would not be entitled to any payment and the CVRs would be delisted from the NYSE. *Id.* ¶¶ 59, 99.

7. FDA approval of the biologics license application for liso-cel by December 31, 2020 was one of the three contractual milestone dates that needed to be met for there to be any payment under the CVRs. *Id.* ¶ 59. Liso-cel is a cell therapy used for treatment of large B-cell lymphoma. The FDA did not approve the liso-cel application by its milestone date. As a result, the CVR agreement terminated and the CVRs were delisted. *See id.* ¶¶ 98-99.

8. Based on alleged events that occurred long after the registration statement became effective, plaintiff alleges that the registration statement included material misstatements or omissions concerning the approval process for liso-cel, BMS's alleged preparedness to obtain FDA approval for liso-cel in time, and the probability that CVR holders would receive a cash payment. *See id.* ¶¶ 77-97, 118-26.

9. On the basis of these allegations, plaintiff asserts claims against all of the defendants under sections 11(a), 12(a)(2), and 15 of the Securities Act on behalf of himself and all persons who acquired: (i) BMS common stock in exchange for Celgene securities in connection with the Celgene merger; and (ii) the CVRs. *Id.* ¶¶ 18, 34, 127-28, 133-50.

## II. Prior Pending Litigation Concerning the CVRs

10. The removed action is one of several cases asserting claims against BMS concerning the CVRs.

11. On October 6, 2021, an alleged purchaser of CVRs filed a putative class action complaint asserting claims against BMS and current or former members of its board of directors under sections 14(a) and 20(a) of the Securities Exchange Act of 1934. *See SM Merger/Arbitrage, L.P. v. Bristol-Myers Squibb Co.*, No. 1:21-cv-8255-JMF (S.D.N.Y.). That action is pending before U.S. District Judge Jesse M. Furman. The complaint in the *SM Merger/Arbitrage* action alleges that the defendants violated the Exchange Act based on alleged misstatements or omissions concerning the CVRs in the joint proxy statement / prospectus dated February 22, 2019. The joint proxy statement / prospectus is part of the registration statement that is the basis for plaintiff's Securities Act claims in this action.

12. On November 2, 2021, another plaintiff filed an action asserting claims under sections 11 and 12(a)(2) of the Securities Act on behalf of all persons or entities who received or purchased CVRs through December 18, 2020, based on the same disclosures that are challenged in both this action and the first-filed *SM Merger/Arbitrage* action. That action, *Williams v. Bristol-Myers Squibb Co.*, originally was filed in the Supreme Court of New York, New York County, but BMS removed it to the U.S. District Court for the Southern District of New York on November 24, 2021. *See Williams v. Bristol-Myers Squibb Co.*, No. 1:21-cv-09998 (S.D.N.Y.). On November 30, 2021, U.S. District Judge Jesse M. Furman accepted the case as related to the first-filed *SM Merger/Arbitrage* action.

13. More recently, on December 3, 2021, a third plaintiff initiated an action asserting claims under sections 10(b), 14(a), and 20(a) of the Exchange Act and sections 11 and 12(a)(2) of the Securities Act on behalf of all former Celgene shareholders who received CVRs in exchange for their Celgene shares and all persons who purchased CVRs between November 20, 2019 and December 31, 2020. *See Khalil v. Bristol Myers-Squibb Co.*, No. 1:21-cv-10351-JMF (S.D.N.Y.).

On December 7, 2021, U.S. District Judge Jesse M. Furman accepted the case as related to the first-filed *SM Merger/Arbitrage* action.

14. Under the Private Securities Litigation Reform Act of 1995, motions to be appointed as lead plaintiff and for approval of the lead plaintiff's selection of lead counsel in the *SM Merger/Arbitrage* action were due by no later than December 6, 2021. On that date, two competing lead plaintiff motions were filed. Both motions seek consolidation of any pending or future related actions filed in, removed to, or transferred to the Southern District of New York. A hearing on the motions is scheduled for December 22, 2021.

15. Earlier, on June 3, 2021, UMB Bank, N.A., as trustee under the Contingent Value Rights Agreement dated as of November 20, 2019 (the "CVR Agreement"), filed an action asserting claims of breach of contract against BMS. That action also is pending before U.S. District Judge Jesse M. Furman. BMS's motion to dismiss the complaint in that action has been fully briefed and is pending. *See UMB Bank, N.A. v. Bristol-Myers Squibb Co.*, No. 1:21-cv-04897-JMF (S.D.N.Y.).

### III. Grounds for Removal

16. This putative class action is subject to removal under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005) ("CAFA").[1]

### A. The CAFA Requirements Are Met.

17. The action satisfies all of the statutory requirements for removal under CAFA. *See* 28 U.S.C. §§ 1332(d)(2), 1453(a). BMS is a Delaware corporation with its principal place of

---

[1] BMS reserves all of its defenses and other rights with respect to the claims asserted. In discussing plaintiff's allegations, BMS does not concede that plaintiff's allegations are true, that BMS or any of the other defendants can be held liable in this action, that any class should be certified in this action, or that plaintiff's alleged class definition is legally or factually tenable.

business in New York.  Compl. ¶ 18.  An action meeting CAFA's jurisdictional requirements can be removed "without regard to whether any defendant is a citizen of the State in which the action is brought[.]"  28 U.S.C. § 1453(b).

### 1. This Is a "Class Action."

18. This is a putative class action, *see* Compl. ¶¶ 1, 127-32; 28 U.S.C. § 1332(d)(1)(B) (definition of "class action"), and there are more than 100 class members in the putative class, 28 U.S.C. § 1332(d)(5)(B).  Plaintiff alleges that "there are hundreds of members of the proposed Classes."  Compl. ¶ 128.  Where the "plaintiff explicitly assert[s] in [his] complaint that there are 'hundreds of members,'" of the putative class, this CAFA jurisdictional requirement is satisfied.  *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 505 (3d Cir. 2014).

### 2. "Minimal Diversity" Exists.

19. "Minimal diversity" is present in this action within the statutory definitions in CAFA.  28 U.S.C. § 1332(d)(2); *see Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 165 (2014) (CAFA "replaced the ordinary requirement of complete diversity . . . with a requirement of minimal diversity.").

20. Plaintiff alleges that he is a resident of Union County, New Jersey.  *See* Compl. ¶ 15 (alleging that "Defendants and their agents affirmatively solicited and sold the subject securities and Registration Statement to Plaintiff and other investors in New Jersey and this county").

21. The complaint alleges that BMS is a Delaware corporation with its headquarters in New York, and it is a citizen of those states for purposes of diversity jurisdiction.  *Id.* ¶ 18; 28 U.S.C. § 1332(c)(1).  Because plaintiff and BMS are citizens of different states, there is minimal diversity under 28 U.S.C. § 1332(d)(2)(A).

22. Even if plaintiff were a citizen of a state other than New Jersey, minimal diversity would still necessarily exist between defendants and plaintiff because the citizenship of BMS and

the individual defendants covers no fewer than nine different states, and it is well established that "an individual may only have one domicile, and thus may only be a citizen of one state for diversity jurisdiction purposes." *E.g.*, *Witasick v. Hambrecht*, 2013 WL 1222680, at *2 (D.N.J. Mar. 25, 2013) (citing *Williamson v. Osenton*, 232 U.S. 604, 614 (1914)).

23. Based on information known to BMS, defendants Mark Alles Peter Arduini are citizens of Pennsylvania; defendants Robert Bertolini, Giovanni Caforio, and Karen Santiago are citizens of New Jersey; defendants Matthew Emmens and Michael Grobstein are citizens of New York; defendant Alan Lacy is a citizen of California; defendants Sandra Leung and Dinesh Paliwal are citizens of Connecticut; defendant Theodore Samuels is a citizen of Missouri; defendant Vicki Sato is a citizen of Massachusetts; and defendant Gerald Storch is a citizen of Florida.

24. As a result, minimal diversity necessarily exists between the defendants and the named plaintiff (in addition to absent putative class members). 28 U.S.C. § 1332(d)(2)(A).

25. Separately, minimal diversity exists under 28 U.S.C. § 1332(d)(C) because defendant Karen H. Vousden is a "citizen or subject of a foreign state," namely, the United Kingdom of Great Britain and Northern Ireland, while plaintiff and other putative class members allegedly are citizens of New Jersey (and other states). Compl. ¶ 15.

26. Minimal diversity also exists because plaintiff asserts his claims on behalf of a putative nationwide class; he asserts claims on behalf of acquirors in the Celgene merger of more than 700 million shares of BMS common stock and more than 700 million CVRs. Compl. ¶¶ 5-6, 16, 99, 128. Because there are putative class members throughout the United States, there is more than a "reasonable probability" that there are members of the putative "class of plaintiffs" who are "citizen[s] of a [s]tate different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *see Ramirez v.*

8

*SDI Card.com, Inc.*, 2008 WL 11383869, at *2 (D.N.J. July 28, 2008) (quoting *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006)).

### 3. The Amount-in-Controversy Exceeds $5 Million.

27. The amount in controversy alleged in the complaint is greater than $5 million, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), 1336(d)(6); *see Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

28. "CAFA mandates that the 'claims of the individual class members shall be aggregated' in order to determine if the 'matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.'" *Judon*, 773 F.3d at 506 (quoting 28 U.S.C. § 1332(d)(6)). "In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." *Frederico v. Home Depot*, 507 F.3d 188, 197 (3d Cir. 2007) (quotations omitted).

29. Plaintiff purports to assert claims for alleged securities violations on behalf of all "persons who acquired [BMS] common stock in exchange for Celgene securities pursuant to the Acquisition[,]" as well as "all person[s] who acquired [BMS] CVRs pursuant or traceable to the Registration Statement." Compl. ¶ 127. The complaint alleges that plaintiff and these putative class members "suffered severe losses" as a result of BMS's alleged avoidance of "approximately $6.4 billion in payments owed to CVRs investors." *Id.* ¶ 13; *see also id.* ¶ 59 (alleging that if all conditions to payment on CVRs had been satisfied, BMS "would [have] owe[d] the CVR holders a total of $6.4 billion").

30. While reserving all rights and defenses, BMS states upon information and belief based on plaintiff's allegations that the amount in controversy in this action exceeds $5 million.

### B. CAFA Overrides the Removal Bar in 15 U.S.C. § 77v(a).

31. The complaint mistakenly asserts that removal of this action is "barred by Section 22 of the 1933 Act [15 U.S.C. § 77v]." Compl. ¶ 14. To the contrary, the broad removal jurisdiction for class actions enacted in CAFA, 28 U.S.C. § 1453, overrides the removal bar in section 22(a) of the Securities Act. *See State of N.J. Dep't of Treasury, Div. of Inv. v. Fuld*, 2009 WL 1810356, at *2 (D.N.J. June 25, 2009) (following *Calif. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86, 90 (2d Cir. 2004) (holding that analogous bankruptcy removal provision overrides § 22(a)); *see also Katz v. Gerardi*, 552 F.3d 558, 562 (7th Cir. 2009) (CAFA removal jurisdiction overrides § 22(a)); *Owen v. Elastos Found.*, 438 F. Supp. 3d 187, 190-91 (S.D.N.Y. 2020) (extending *WorldCom* reasoning in holding that CAFA removal jurisdiction overrides § 22(a)); *N.J. Carpenters Vacation Fund v. Harborview Mortg. Loan Tr. 2006-4*, 581 F. Supp. 2d 581, 583 (S.D.N.Y. 2008) (same).[2]

### C. Plaintiff Cannot Show That an Exception to Removal Jurisdiction Applies.

32. Once a defendant has carried its burden to establish a basis for federal subject matter jurisdiction, the burden shifts to the party opposing removal to demonstrate that a statutory exception to removal jurisdiction applies. *See Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009). If plaintiff opposes removal, he cannot meet his burden here.

---

[2] The Ninth Circuit reached the opposite conclusion in *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031 (9th Cir. 2008). An important part of the panel's reasoning – that removal jurisdiction must be narrowly construed – was rejected by the Supreme Court in *Dart Cherokee* in a way that even the Ninth Circuit has acknowledged is irreconcilable. *See Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1183 n.2 (9th Cir. 2015) ("[w]e are not bound by" *Luther* and other removal precedents because *Dart Cherokee* decision "undercuts the theory or reasoning" underlying those decisions). The questionable *Luther* holding does not govern in this Circuit regardless.

33. CAFA contains a limited exception to the removal jurisdiction granted under the statute for class actions involving "a claim concerning a covered security." 28 U.S.C. § 1453(d)(1); *see* 28 U.S.C. § 1332(d)(9)(A) (same). As explained below, this exception is inapplicable here.

34. The exception borrows the definition of "covered security" set forth in provisions added to the federal securities laws by the Securities Litigation Uniform Standards Act of 1998, Pub. L. No. 105-353, 112 Stat. 3227 (1998) ("<u>SLUSA</u>").[3] SLUSA "prohibits certain securities class actions *based on state law*" and provides for removal of those actions so that they can be dismissed in federal court. *Cyan Inc. v. Beaver County Emps.' Ret. Fund*, 138 S. Ct. 1061, 1067-68 (2018) (emphasis added); *see also Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 645 n.12 (2006).

35. The "covered security" exception was enacted to ensure that CAFA did not interfere with the jurisdiction and removal provisions enacted in SLUSA. The "overall design" of the two statutes was "to assure that the federal courts are available for all securities cases that have national impact (*including those that involve securities traded on national exchanges*) . . . ." *Estate of Pew v. Cardarelli*, 527 F.3d 25, 32 (2d Cir. 2008) (emphasis added).

36. BMS is not invoking SLUSA as a basis for removal of this putative class action. SLUSA did not purport to address jurisdiction or removal concerning Securities Act cases filed in state court. *Cyan*, 138 S. Ct. at 1069. Removal of this action therefore does not interfere with SLUSA. Instead, it harmonizes the jurisdictional grants under the two statutes and advances their common goal to ensure "that the federal courts are available for all securities cases that have national impact." *Cardarelli*, 527 F.3d at 32.

---

[3] "Covered securities," generally, are securities that are traded on a national exchange. *See* 15 U.S.C. § 77p(f)(3) (Securities Act definition).

37. Though the Third Circuit has yet to address the question, the Second, Fourth, and Seventh Circuits agree that CAFA's "covered security" exception does not apply to state court class actions that assert only Securities Act claims. *Cardarelli*, 527 F.3d at 30 (exception to CAFA "carves out class actions for which jurisdiction exists elsewhere under federal law, such as under [SLUSA], *i.e.*, *state-law fraud claims* in connection with the purchase or sale of securities traded on a national stock exchange[.]") (emphasis added); *see Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 336 n.10 (4th Cir. 2019) (quoting Second Circuit interpretation with approval); *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012) (same); *see generally Owen*, 438 F. Supp. 3d at 193 (*Cyan* not only says "nothing whatsoever about CAFA, it dealt only with a statute whose clear text did not authorize the removal of Securities Act class actions. That is not the situation here, because CAFA does provide explicit authorization for removal of such actions.").[4]

38. CAFA was enacted to address "[a]buses in class actions" that "undermine[d] the national judicial system" and to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of *interstate cases of national importance* under diversity jurisdiction[.]" Pub. L. No. 109-2, §§ 2(a)(4), 2(b)(2) (emphasis added). This action, which involves allegations of federal securities violations in a registration statement for a multibillion-dollar merger transaction, *see* Compl. ¶¶ 2, 6, unquestionably is such a case.[5]

---

[4] An unpublished ruling in this district, decided long before *Cyan*, reached the opposite conclusion. *Rubin v. Mercer Ins. Grp., Inc.*, 2011 WL 677466 (D.N.J. Feb. 15, 2011). That order ultimately remanded an action asserting state-law breach of fiduciary duty claims applying the separate CAFA exception provided in 28 U.S.C. § 1453(d)(3). Unlike *Cardarelli* and other Circuit decisions, the court in *Rubin* did not address the interaction between CAFA and SLUSA in putative securities class actions.

[5] Other CAFA exceptions also do not apply. The primary defendants are not "States, State officials, or other governmental entities[.]" 28 U.S.C. § 1332(d)(5)(A). This is not a primarily "local" controversy in which a substantial majority of putative class members are from New York.

**IV.     All Other Statutory Requirements Are Satisfied.**

39.     This Court is the proper federal district for the removal of the action because it is the federal district embracing the place where the action is pending.  28 U.S.C. §§ 1446(a), 1453(b).

40.     The notice of removal is timely.  28 U.S.C. § 1446(b).

41.     Consent to removal of the other named defendants is not required. 28 U.S.C. § 1453(b).

42.     BMS will provide written notice to plaintiff of the filing of this Notice of Removal in accordance with 28 U.S.C. § 1446(d).

43.     A copy of this notice will be filed with the Clerk of the Superior Court of the State of New Jersey, Union County, in accordance with 28 U.S.C. § 1446(d).

44.     This notice of removal is signed pursuant to Fed. R. Civ. P. 11.  *See* 28 U.S.C. § 1446(a).

45.     By filing this notice of removal, BMS does not waive any defenses, claims, arguments, or rights of any kind.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

28 U.S.C. § 1332(d)(4).  The claims at issue are asserted under federal securities law and involve matters of national or interstate interest.  *See* 28 U.S.C. § 1332(d)(3).  Finally, plaintiff's claims do not concern either "corporate governance" or "disputes over the meaning of the terms of a security[.]"  *Cardarelli*, 527 F.3d at 30, 33; *see* 28 U.S.C. §§ 1332(d)(9)(B), (C), 1453(d)(2), (3).

WHEREFORE, BMS hereby removes this action to the United States District Court for the District of New Jersey from the Superior Court of the State of New Jersey, Union County.

Dated: Short Hills, New Jersey
       December 10, 2021

DLA PIPER LLP (US)

By: /s/ Michael D. Hynes
    Michael D. Hynes (Atty. ID No. 020241999)

51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078
Tel: (973) 520-2550
michael.hynes@dlapiper.com

    -and-

John J. Clarke, Jr. (*pro hac vice* motion to be filed)
Steven M. Rosato (Atty. ID No. 108882014)
1251 Avenue of the Americas
New York, New York 10020
Tel:  (212) 335-4500
john.clarke@dlapiper.com
steven.rosato@dlapiper.com

*Attorneys for Defendant*
 *Bristol-Myers Squibb Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2021, I caused a true and correct copy of the foregoing Notice of Removal to be served on the following via the New Jersey eCourts electronic filing system and overnight courier:

> Peter S. Pearlman
> Audra DePaolo
> Cohn Lifland Pearlman Herrman & Knopf LLP
> Park 80 West – Plaza One
> 250 Pehl Avenue, Suite 401
> Saddle Brook, New Jersey 07663
> Tel.: (201) 845-9600
> Fax: (201) 845-9423
>
> *Attorneys for Plaintiff*

/s/ Michael D. Hynes
Michael D. Hynes